UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TERRELL SHANARD WICKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No._____ |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DAMAGES FOR MEDICAL MALPRACTICE
AND FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

Plaintiff Terrell Shanard Wicker, by and through his undersigned counsel, files this Complaint for medical malpractice and for damages under the Federal Tort Claims Act against the Defendant United States of America as follows:

**INTRODUCTION**

1.

This is an action against the Defendant United States of America under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for negligence in connection with medical care provided to Plaintiff Terrell Shanard Wicker ("Mr. Wicker") by the Joseph Maxwell Cleland Atlanta VA Medical Center ("Atlanta VAMC").

2.

The claims herein are brought against Defendant United States of America pursuant to the Federal Tort Claims Act and 28 U.S.C. § 1346(b)(1) for money damages as compensation for injuries sustained by Plaintiff, caused by Defendant United States of America's negligence on the part of Defendant's agents and employees, including Atlanta VAMC.

3.

Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act, as evidenced by a letter dated March 27, 2023 and accompanying *Standard Form 95*. A true and correct copy of the letter and accompanying *Standard Form 95* is attached hereto as Exhibit A.

4.

This suit has been timely filed, in that Plaintiff served notice of this claim on the U.S. Department of Veterans Affairs, and such notice was acknowledged as received on March 30, 2023, less than two years after the incident forming the basis of this suit. A true and correct copy of the signed Green Card/Return Receipt is attached hereto as Exhibit B.

5.

On September 6, 2023, the U.S. Department of Veterans Affairs wrote Plaintiff a letter advising him that they were denying his claim. A true and correct

copy of the September 6, 2023, denial letter is attached hereto as <u>Exhibit C</u>.

6.

Pursuant to the letter and to 28 U.S.C. § 2401(b), Plaintiff is timely filing this Complaint within six (6) months of the mailing of the September 6, 2023, denial letter.

7.

The nature of this action is a medical malpractice claim involving the failure to timely inform Plaintiff of a lung nodule that was subsequently diagnosed as stage 4 lung cancer.

8.

Plaintiff was not symptomatic and was not informed of the lung nodule until approximately November 17, 2021. Accordingly, but for the facts set forth below, the statute for his claim pursuant to O.C.G.A § 9-3-71 may have run as early as November 17, 2023.

9.

In March of 2023, Plaintiff contacted the undersigned counsel and signed an Authorization for Release/Disclosure of Protected Health Information that allowed the undersigned to obtain medical records from Atlanta VAMC on his behalf.

10.

The undersigned contracts with American Retrieval Company ("ARC"), a

3

medical record retrieval company, to obtain medical records.

11.

On March 29, 2023, ARC sent a request for records to Atlanta VAMC via mail.

12.

On April 14, 2023, a representative of ARC spoke to a man named "Ray," who informed him that Atlanta VAMC had received the request on April 10, 2023, and that the turnaround time was 20 business days.

13.

On April 19, 2023, and April 27, 2023, representatives of ARC attempted to speak with a representative of Atlanta VAMC, but were unsuccessful, as their calls went unanswered.

14.

On May 3, 2023, a representative of ARC spoke with a staff member in Atlanta VAMC's medical records department. The staff member transferred the ARC representative to the concern department, who advised the ARC representative that Atlanta VAMC had received the request on April 10, 2023, that turnaround time was 20 business days and that they were still processing the request.

15.

On May 10, 15, 19, 24, and 30, representatives of ARC attempted to speak

with a representative of Atlanta VAMC, but were unsuccessful, as their calls went unanswered.

16.

On May 31, 2023, an ARC representative spoke to a woman named "Betty," who informed the representative that that the undersigned's firm could not be on the authorization and that only ARC could be listed. She asked that the request be resubmitted.

17.

Later, on May 31, 2023, ARC mailed the new request with only ARC listed on the authorization, as per the Atlanta VAMC's representative's request.

18.

On June 12, 2023, an ARC representative spoke with a woman named "LaSherri," who informed them that Atlanta VAMC received the updated request on June 9, 2023, and that the turnaround time was 20 business days.

19.

On June 20, 2023, a representative of ARC attempted to speak with a representative of Atlanta VAMC, but was unsuccessful, as their call went unanswered.

20.

On June 22, 2023, an ARC representative spoke with a man named "Hillman"

5

who again stated Atlanta VAMC received the updated request on June 9, 2023, and that processing time was 20 business days. He advised that he would ask for the request to be expedited, but that he could not guarantee it would be.

21.

On June 29, July 5, July 10 and July 13, ARC representatives attempted to speak with a representative of Atlanta VAMC, but were unsuccessful, as their calls went unanswered.

22.

On or about July 17, 2023, ARC received an invoice for prepayment of the records. The invoice was forwarded to the undersigned, who approved the charge on July 17, 2023.

23.

On August 4, 2023, ARC mailed a check for the records to Atlanta VAMC.

24.

On August 15, 2023, and August 18, 2023, representatives of ARC attempted to speak with a representative of Atlanta VAMC, but were unsuccessful, as their calls went unanswered.

25.

On August 22, 2023, an ARC representative spoke with Hillman at Atlanta VAMC, who stated he would talk to his manager to advise payment was sent and

see if the request could be expedited.

26.

On August 23, 24, 25, 28, 29, 30 and 31 and September 1, 5, 6, 8, 11, 12 and 13, representatives of ARC attempted to speak with a representative of Atlanta VAMC, but were unsuccessful, as their calls went unanswered.

27.

On September 14, 2023, an ARC representative spoke to an employee of Atlanta VAMC, who advised that they never received payment. The ARC representative was then transferred to the voicemail of "Donna President," and a voicemail was left.

28.

On September 15, 2023, an ARC representative spoke with "Elizabeth" who stated that Atlanta VAMC had received payment and was just awaiting the certification from the certifier. Elizabeth further advised that Donna President no longer worked there.

29.

While ARC continued its efforts to obtain the records, on September 15, 2023, the undersigned, concerned that the statute of limitations may be approaching, sent a letter via Certified Mail, Return Receipt Requested, to the facility pursuant to O.C.G.A. § 9-3-97.1, again requesting a "full, complete, certified copy of Mr.

Wicker's medical records, billing records, and imaging records/files for dates of service January 1, 2020 to present," along with another properly executed Request For And Authorization to Release Health Information. A true and correct copy of the letter and release is attached as <u>Exhibit D</u>.

30.

The facility received the undersigned's September 15, 2023, letter on September 19, 2023. A true and correct copy of the tracking information from USPS is attached hereto as <u>Exhibit E.</u>

31.

Pursuant to O.C.G.A. § 9-3-97.1, the facility was required to provide the records or a letter of response to the undersigned within twenty-one (21) days of the receipt of the letter on September 19, 2023, which was October 10, 2023.

32.

Neither the undersigned nor ARC received the records or a letter of response on or prior to October 10, 2023.

33.

Pursuant to O.C.G.A. § 9-3-97.1(a), the statute of limitations, therefore, ceased to run on October 11, 2023, the twenty-second day following the day the undersigned's request was received.

34.

Pursuant to O.C.G.A. § 9-3-97.1(c), no period of limitation shall be tolled for a period exceeding 90 days.

35.

Accordingly, the period of limitation was tolled for 90 days, beginning on October 11, 2023, and therefore, Plaintiff is filing this Complaint timely within such 90 day period.

**PARTIES, JURISDICTION AND VENUE**

36.

Plaintiff Terrell Shanard Wicker is, and at all times relevant to hereto was, a resident of Dekalb County, Georgia.

37.

The U.S. Department of Veterans Affairs was, at all times applicable to this Complaint, engaged in the business of owning, managing, and/or operating the medical facility known as Joseph Maxwell Cleland Atlanta VA Medical Center, located at 1670 Clairmont Road, Decatur, GA 30033.

38.

The U.S. Department of Veteran Affairs is a federal agency and is therefore a covered entity under the FTCA. (28 U.S.C. § 2671)

39.

Pursuant to 28 USC § 1346(b)(1) and the FTCA, jurisdiction is proper in this Court.

40.

Venue is proper under 28 USC § 1402(b) and 28 USC 1391(b) and 1391(c), in that all, or a substantial part, of the acts and omissions forming the basis of these claims occurred in the Northern District of Georgia and Defendant does business in this judicial district.

41.

Plaintiff states his intention to bring each and every claim permissible, proper and authorized under Georgia law and seek all damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, and general damages permissible under Georgia law.

## FACTUAL BACKGROUND

42.

On November 17, 2020, Terrell Wicker underwent a CT scan of his abdomen/pelvis for abdominal pain at the Joseph Maxwell Cleland Atlanta VA Medical Center ("Atlanta VAMC"). The report on this scan includes the following, "Nodularity along the right lower major fissure, new from the CT abdomen/pelvis 7/20/2018. Consider nonemergent CT chest to further evaluate."

43.

On August 17, 2021, Terrell Wicker underwent another CT scan of his abdomen/pelvis for a possible kidney stone at the Atlanta VAMC. The report on this CT states that the scan demonstrates "increased size of a partially imaged 12 x 8 mm pleural-based solid pulmonary nodule on the right major fissure when compared to the November 2020 CT. Dedicated chest CT is recommend for further evaluation."

44.

Mr. Wicker was not informed or made aware of the findings or recommendation of consideration of a CT scan of the chest for further evaluation contained in the report for the November 17, 2020, CT scan or the August 17, 2021, CT scan for at least a year from the date of the first scan.

45.

On December 8, 2021, Terrell Wicker underwent a CT scan of his chest at the Atlanta VAMC. The report on this scan includes a comparison to the August 17, 2021, CT scan of the abdomen/pelvis, and states that the scan demonstrates --

> "1. Innumerable pleural-based solid nodules scattered throughout the right hemithorax with the larger nodules appearing somewhat spiculated and the dominate nodule appearing inseparable from the major fissure and centered within the superior segment of the right lower lobe. Findings are felt to be most consistent with metastatic pleural disease. It may be that the dominant nodule within the superior segment of the right lower lobe represents a primary lung malignancy with subsequent pleural metastases. An atypical appearance of mesothelioma or lymphoma are additional considerations as is metastatic disease from an unknown primary. Given the unilateral nature of the disease, an infectious or inflammatory process is felt to be less likely. 2. Numerous shotty

11

mediastinal and cardiophrenic lymph nodes are nonspecific, but are concerning for metastatic involvement. 3. Recommend further evaluation with PET/CT. Patient would benefit from Pulmonary Service and Heme/Onc Service consults as well."

46.

Subsequent work up from January 2022 through April 2022 included a whole-body PET-CT and bronchoscopy with biopsy, leading to a diagnosis of Stage IV non-small cell lung cancer, for which palliative chemotherapy treatment was started in May of 2022.

## **NEGLIGENCE**

47.

The Atlanta VAMC, by or through one or more of its physicians, nurse practitioners, or other agents or employees, deviated from the standard of care and skill exercised by medical facilities, medical providers, physicians, nurse practitioners, or other agents or employees generally under similar conditions and like surrounding circumstances with respect to the care of Terrell Wicker in 2020 and 2021.

48.

The Atlanta VAMC, by or through one or more of its physicians, nurse practitioners, or other agents or employees, had a duty to notify Terrell Wicker of the findings or recommendations of the November 17, 2020, CT of the chest at or around the time of the CT scan was performed, and in any event well before a year from the date of the scan.

12

49.

To a reasonable degree of medical probability, the delay in notification, diagnosis and treatment of the findings on the November 17, 2020, CT of the chest allowed the cancerous tumor to progress and spread.

50.

Exhibit F attached hereto, the Affidavit of Summit Gupta, M.D., is submitted in compliance with O.C.G.A. § 9-11-9.1, and sets forth at least one act of negligence on the part of Atlanta VAMC.

WHEREFORE, Plaintiff prays as follows:

(a)  That summons be issued and that Defendant be served with process and be required to answer according to law;

(b)  The Plaintiff recover the full value of his altered quality of life and decreased life expectancy in an amount to be determined by the jury;

(c)  That Plaintiff recover for past, present and future pain and suffering in an amount to be determined by the jury;

(d)  That Plaintiff recover past, present and future medical expenses and any other expenses in an amount to be proven at trial;

(e)  That Plaintiff recover past, present and future lost wages and income in an amount to be determined by the jury; and

(f) That Plaintiff recovers other further relief as this Court deems appropriate.

Respectfully submitted, this 5th day of January, 2024.

/s/ Daniel M. Epstein
JAMES (JAY) SADD
Georgia State Bar No.: 622010
DANIEL M. EPSTEIN
Georgia Bar No. 249529
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
Ph: (404) 255-6677
Fax: (404) 255-7340
jay@lawyersatlanta.com
dan@lawyersatlanta.com
*Attorneys for Plaintiff*